UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:22-CR-00340 |
| v. | ) | |
| | ) | CHIEF JUDGE CRENSHAW |
| MAHAN JANBAKHSH | ) | |
|    a/k/a MARK JANBAKHSH | ) | |
| STEVEN L. PIPER | ) | |

## UNITED STATES' NOTICE OF EXPERT

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorneys and provides notice, pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Local Criminal Rule 16.01(a)(2), that the United States intends to call an expert witness in the upcoming trial in this matter. In general terms, Holly Daetwyler ("the Witness") will be testifying about her examination of Auto Masters operations, financial transactions, books, and records, which she conducted while she was Managing Director at MCA and providing services on behalf of Capital One, and during her tenure assisting the Receiver for the Auto Masters Finance Companies. The United States expects this testimony to be more akin to factual testimony under FRE 701. However, because the witness used her expertise in forensic accounting and financial statement auditing and analysis during the bankruptcy and adversary proceedings, the United States is providing this expert notice in an abundance of caution to the extent the Witness's anticipated testimony is considered expert testimony under FRE 702 and 703.

### I.    Opinions, and Bases and Reasons for Opinions

*A. Background and the Witness's Bases for Testimony*

"America's United Financial, LLC, and Affiliates" was a business that was made up of nine used car dealerships (the "Dealerships") and six related finance companies ("RFCs") located in and around Nashville, Tennessee (collectively, "Auto Masters"). Defendant Mahan Janbakhsh was

the CEO and majority owner of each entity; Defendant Steven L. Piper was a Certified Public Accountant and the CFO of Auto Masters. Beginning at least as early as 2014, Auto Masters had a line of credit with Capital One National Association ("Capital One") and First Tennessee Bank, now known as First Horizon Bank ("First Tennessee") (the "LOC"). As part of the terms of the LOC, Auto Masters was required to submit "borrowing base certificates" ("BBC's") to Capital One each month. In August 2017, Defendant Piper submitted a BBC to Capital One representing that as of July 31, 2017, the total value of "eligible loans" was $91,677,386.

On October 9, 2017, Defendant Piper sent a BBC to Capital One disclosing that Auto Masters had overstated its collateral by over $33 million. Further, Auto Masters had drawn over $20 million more than it was permitted to draw under the terms of the LOC.

On October 17, 2017, Auto Masters filed for Chapter 11 reorganization. On November 1, 2017, the Witness, and MCA Financial Group, Ltd., were engaged by Capital One to perform expert and consulting services in the Bankruptcy. MCA conducted analyses of the financial transactions that led Auto Masters to disclose the overstatement of collateral, and issued an expert report on November 15, 2017 (the "November 15, 2017 Expert Report").

On December 22, 2017, MCA was appointed by the Tennessee Chancery Court as the Receiver in a receivership action against Auto Masters (the "Receivership"). During the Receivership, MCA stepped in and operated the Auto Masters RFC's, including servicing, marketing, and eventually selling the assets of the Auto Masters RFC's. In this role, MCA and the Witness performed independent research, extracted data and reports from Auto Masters' accounting system ("QuickBooks") and dealer management system ("AMS"), and performed interviews on site at the

2

various Auto Masters locations. MCA and the Witness also examined hundreds of business records, loan files, payment histories, and systematic information within AMS.

After the Receivership concluded, on March 11, 2019, MCA was re-engaged by Capital One to perform consulting and expert services related to the adversary proceeding, including analysis of the applicable business, financial, and other records of Auto Masters relevant to the claims in the adversary proceeding. MCA and the Witness assisted in the preparation of an expert report dated May 15, 2019 (the "May 15, 2019 Expert Report"), which analyzed financial transfers to former Auto Masters owners and employees.

The Witness's testimony will be based upon review of documents and records related to Auto Masters, site visits, financial analysis, and conversations with Defendants, among others, about the operation of the business. MCA and the Witness gained extensive knowledge about Auto Masters during its engagement on behalf of Capital One during the Receivership, as well as before and after the Receivership. A list of the documents and other items the Witness has relied upon are attached to each Expert Report, which are appended hereto.

*B. The Witness's Testimony*

The Government anticipates the Witness will provide testimony consistent with November 15, 2017 Expert Report and the May 15, 2019 Expert Report. As set forth in more detail in those reports, the United States expects the Witness will testify about the organization, structure, ownership, and operation of Auto Masters. The Witness will describe the Auto Masters Vehicle Sales and Floorplan Financing, the Capital One Line of Credit and Ovation Financing, and the Falsified RI Contracts. The Witness will identify and detail the transfers of money outside Auto Masters to Defendants and entities owned by Defendant Mark Janbakhsh.

3

The Witness will describe how false information was input into AMS, the dealer management system, through the posting of false cash receipts on RI Contracts that had previously been paid off, charged off or closed, thereby falsely showing such loans as being current and active. The Witness will describe the login credentials used to input the false entries in AMS, the dealerships where the falsified loans existed, the duration of falsified contracts, and the number and dollar value of the falsifications.

The Witness will discuss the way AMS was used within the business, the importance of timely and successfully collecting on RI Contracts in a business like Auto Masters, and the steps Auto Masters took to collect on legitimate loans. The Witness will explain when RI Contracts are appropriately discharged.

The Witness will explain that many of the falsified RI Contracts were "wiped" from the system using the "unwind" feature in AMS, which resulted in the loan histories being deleted from AMS. The Witness will describe the "unwind report," which summarizes the details of the "unwound" loans. The Witness will provide examples of falsified loans, which were ultimately "unwound," as well as examples of falsified RI Contract reports that were used to prepare the BBC's submitted to Capital One. These examples are explained in more detail in the May 15, 2019 Expert Report. The Witness analyzed and will describe the value of loans "unwound" from AMS, the dates on which those loans were "unwound," as well as the Dealership where the "unwound" loans originated, based upon data in AMS.

MCA and the Witness viewed the RI Contracts and ran analysis using AMS data to find out the details of the falsified loans. The Witness will testify that the falsified loans were based upon thousands of false entries being input into AMS each month. The Witness will testify that the

4

falsifications were readily apparent, in part because a significant percentage of the portfolio was based on falsified RI Contracts, and a significant percentage of these false contracts were "unwound" in AMS in September and October 2017, representing approximately 29% of the total RI Contract portfolio for Auto Masters as of July 2017. Further, the Witness will testify that the falsifications were readily apparent because: the RI Contract report included duplicate and triplicate VIN numbers; the volume and amount of falsified RI Contracts that existed in the system was significant; the falsified contracts were "unwound" by someone at Auto Masters with access to AMS; and actual daily cash collections and deposits would not have matched those recorded in AMS. The Witness will testify about the various places the falsified RI Contracts were reflected, including: the BBC's that Defendant Piper submitted to Capital One each month; the tax returns that Defendant Piper prepared and Defendant Mark Janbakhsh signed; and the internal financial statements and annual audited financial statements that Defendant Piper prepared.

The Witness will testify that the falsifications permitted Auto Masters to falsely inflate the company's borrowing base, which enabled the company to borrow and retain significantly more money from the Capital One and Ovation Loans than what was permitted under the terms of their agreements. The Witness will testify that these distributions to Auto Masters ultimately flowed to Defendants, to other Auto Masters Owners, and non-Auto Masters affiliates owned by Defendant Mark Janbakhsh, including over $18 million in distributions to Defendants and Owners, and over $5 million in distributions to affiliated entities between 2013 and 2017.

## II.     Qualifications

The Witness's testimony will be based, in part, on her training and experience in the area of financial advisory services, financial restructuring, and business oversight and monitoring,

5

which includes forensic accounting and financial statement auditing and analysis. The Witness's curriculum vitae is also attached to this disclosure and details her training and experience.[1] The Witness has not authored any publications in the previous 10 years.

### III. Prior Courtroom Testimony

Ms. Daetwyler has not provided in-court expert testimony in the past four years.

### IV. Signature of Witness

I, Holly E. Daetwyler, have reviewed the foregoing disclosure and approve of the contents contained herein.

HOLLY E. DAETWYLER
Managing Director, MCA Financial Group

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By:      *s/ Kathryn W. Booth*
KATHRYN W. BOOTH
CHRIS SUEDEKUM
Assistant U. S. Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151
Kathryn.Booth@usdoj.gov

---

[1] The United States has redacted the CV to remove the witness's personal information but has provided an unredacted copy via email to counsel for the defendants.

6

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing will be served electronically to counsel for defendants, via the Court's Electronic Case Filing System, on January 12, 2024.

_s/ Kathryn W. Booth_
KATHRYN W. BOOTH
Assistant United States Attorney