UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:22-CR-00340 |
| v. ) | |
| ) | CHIEF JUDGE CRENSHAW |
| MAHAN JANBAKHSH ) | |
| a/k/a MARK JANBAKHSH ) | |
| STEVEN L. PIPER ) | |

### RESPONSE IN OPPOSITION TO MOTION TO SEVER

Comes now the United States, by and through its undersigned attorneys, and responds to Defendant Steven L. Piper's *Motion to Sever Counts 1 – 12 and Count 15 From Counts 19-21*. (*Docket Entry* 73.) In his Motion, Piper asks the Court to sever Counts 1 – 12 and 15, which charge Piper and codefendant Mark Janbakhsh with conspiracy, bank fraud, and bankruptcy fraud related to the bank fraud, from Counts 19 through 21 of the Indictment, which charge Piper with filing false federal income tax returns for tax years 2016, 2017, and 2019. In support of his motion, the Defendant asserts that these tax fraud counts should be severed from the underlying conspiracy, bank fraud, and bankruptcy fraud charges because the tax fraud counts "have nothing to do with the income tax return related allegations in the other counts," and is not based on the same acts or transactions as the conspiracy, bank fraud, and bankruptcy fraud counts. (*Motion* at 2.)

The Defendant's arguments are without merit. The income that Piper received and failed to report during tax years 2016 and 2017 represents proceeds derived from the underlying conspiracy and fraud counts. As discussed below, the Sixth Circuit has consistently held that it is proper to join tax charges and fraud charges when the unreported income represents fraud proceeds. Further, it is not in the interest of judicial economy to sever Count 21, which alleges tax fraud for the 2019 tax year. The evidence that will be used to prove the violation of Count 21

overlaps substantially with the evidence that will be used to prove the underlying fraud and the unreported income in tax years 2016 and 2017. For the following reasons, the Defendant's motion should be denied.

## I.     Applicable Legal Authority

Multiple offenses may be joined in a single Indictment if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Defendants may be joined in an indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Rule 8(b) further provides that "[t]he defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). The joinder rule "can, and should, be broadly construed in favor of initial joinder, because of the protection Rule 14 affords against unnecessarily prejudicial joinder." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).

"[A] strong policy presumption exists in favor of joint trials," particularly "when charges will be proved by the same evidence and result from the same acts," *United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004) (citing *United States v. Hamilton*, 689 F.2d 1262, 1275 (6th Cir. 1982)), or when charges "are logically interrelated and involve overlapping proof." *Swift*, 809 F.2d at 322. That is because "[s]ociety has an interest in speedy and efficient trials." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006). Separate trials also "produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *Id.*

Notably, joinder is "highly favored in conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy." *United States v. Tedder,* 801 F.2d 1437, 1450 (4th Cir. 1986); *see also United States v. Hessling*, 845 F.2d 617,

619 (6th Cir. 1988) ("[T]he general rule in conspiracy cases is that persons jointly indicted should be tried together and that this is particularly true where the offenses charged may be established against all of the defendants by the same evidence and which result from the same series of acts.").

Federal Rule of Criminal Procedure 14 permits a court to grant severance in a case where defendants are properly joined "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Caver*, 470 F.3d at 238 (citation and quotation omitted). Examples of such "serious risks" include cases "where evidence is admissible against one defendant but not another, where jointly tried defendants have 'markedly different degrees of culpability,' or where exculpatory evidence would be inadmissible in a joint trial." *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see also United States v. Gallo*, 763 F.2d 1504, 1525-26 (6th Cir. 1985) (explaining that, to obtain a severance, the defendant must show an inability by the jury to separate and treat distinctively the evidence relevant to each count for which the defendant is on trial). A defendant seeking severance "thus bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *Caver*, 470 F.3d at 238 (citation and quotation omitted); *see also Martinez*, 432 F. App'x at 529 ("Risk of simple prejudice is insufficient to sever the trials of co-defendants; the prejudice must be compelling, specific, and actual.") (citation and quotation marks omitted).

Furthermore, even when a defendant shows a risk of prejudice, severance is neither mandated nor automatic. "Less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (internal citations omitted); *see also Swift*, 809 F.2d at 322 (potential jury confusion must be balanced against society's need for speedy and efficient trials). That is because, although "there is always a danger that the jury [in a joint trial]

will convict on the basis of the cumulative evidence rather than on the basis of evidence relating to each defendant," *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1988), "the risk of prejudice to defendants in a joint trial is presumably low, because juries are presumed capable of sorting evidence and considering separately each count and each defendant." *Caver*, 470 F.3d at 238 (citation and quotation marks omitted).

Tax counts and fraud counts are properly joined when the tax fraud is based on funds derived from fraud proceeds. As the Sixth Circuit has held,

> It is appropriate to combine tax charges against one defendant with fraud charges against that same defendant and other codefendants if the tax evasion charges arise directly out of the common illicit enterprise. … Failure to report the income from an illegal activity is an act which does arise directly out of the common enterprise because concealment of ill-gotten gain is an integral part of assuring the success of that illegal activity.

*United States v. Bibby*, 752 F.2d 1116, 1121 (6th Cir. 1985) (internal citations omitted); *see also United States v. Riley*, 621 F.3d 312, 334 (3d Cir. 2010), as amended (Oct. 21, 2010) (quoting *Bibby* and explaining that "[b]ecause the tax evasion arose directly from the land fraud proceeds, it was in the interest of judicial efficiency to join these claims."); *see also United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) ("Tax and related counts covering the same time period and involving the same evidence are properly joined."); *United States v. Wirsing*, 719 F.2d 859, 864 (6th Cir. 1983)("tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged")(citations omitted); *United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012) (citing *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007) (citations and internal quotation marks omitted) ("Tax counts may be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged. The most direct link possible between non-tax crimes and tax fraud is that funds derived from non-tax violations either are or produce the unreported income. Thus, if a defendant is charged with fraud,

the government may prosecute the defendant for fraud and for not paying taxes on the profits produced by the alleged fraud jointly.").

## II. The tax fraud charges and the fraud charges are properly joined under Fed. R. Crim. P. 8

The tax fraud charges against Piper (Counts 19 – 21) were properly joined together and with the rest of the conspiracy, bank fraud, bankruptcy fraud, and obstruction charges in the Indictment. First, as explained above, "[i]t is appropriate to combine tax charges against one defendant with fraud charges against that same defendant and other codefendants if the tax evasion charges arise directly out of the common illicit enterprise." *Bibby*, 752 F.2d at 1121. Further, the tax fraud counts are properly joined because they "are logically interrelated and involve overlapping proof" *see Swift*, 809 F.2d at 322, and they "will be proved by the same evidence and result from the same acts." *see Beverly*, 369 F.3d at 534.

Counts 19 and 20 are properly joined to the rest of the counts in the Indictment because the unreported income represents fraud proceeds. The underlying fraud conspiracy describes a scheme to defraud Capital One and to commit bankruptcy fraud. According to the Indictment, Defendants Piper and Janbakhsh conspired to falsify and direct others to falsify Auto Masters' loan records and then took fraudulent draws on the Line of Credit at Capital One. These fraudulent draws on the Line of Credit at Capital One—and the corresponding deposits into Auto Masters' bank accounts—occurred during 2013 through 2017.

The Government expects the evidence at trial to show that Piper benefitted from the fraud conspiracy, in part, by receiving income from Auto Masters in the form of direct payments and personal expenditures that were paid for by the company during the conspiracy. For example, the Government expects the evidence at trial on Counts 19 and 20 to show that in 2016 and 2017, in addition to his salary, the Defendant received income from Auto Masters that he did not report on

5

his tax returns (specifically, $112,796 in 2016 and $76,309 in 2017).[1] These funds represented a portion of the fraud proceeds. The Sixth Circuit—and other circuits—have routinely approved of joinder in such a situation. *See id.; Saadey*, 393 F.3d at 678; *Wirsing*, 719 F.2d at 864; *see also Riley*, 621 F.3d at 334 (3d Cir.); *Litwok*, 678 F.3d at 216 (2d Cir.); *Shellef*, 507 F.3d at 98 (2d Cir.).

Further, the fact that Piper did not report the income he received from Auto Masters is evidence of concealment of the fraud scheme and the conspiracy. The Indictment specifically alleges that as part of the conspiracy, Defendants Piper and Janbakhsh took steps to conceal the fraud. (D.E. 3, *Indictment*, PageID#8.) In addition, both defendants are charged for doing just that—concealing the conspiracy—by lying under oath during the bankruptcy proceedings about their involvement in the conspiracy. Piper's failure to report income he received during the fraud on his tax returns is evidence of his continuing effort to conceal the fraud.

In addition, the Government expects the evidence at trial to show that after the bank fraud and bankruptcy fraud, Piper continued to be employed by co-conspirator Mark Janbakhsh at AUF Pro Services, which is another company Mark Janbakhsh owned. In 2019, Piper received a paycheck from AUF Pro Services—demonstrating his continued employment by and association with Defendant Mark Janbakhsh following the Auto Masters bankruptcy—and he also received payments from AUF Pro Services in the form of personal expenditures that were reimbursed out of the AUF Pro Services bank accounts. Like the payments he received in 2016 and 2017, the Government expects the evidence at trial to show that he failed to report these payments received

---

[1] A portion of Piper's unreported income in 2017 came from Balero Group, which was another of Mark Janbakhsh's companies, and which had comingled funds with Auto Masters. It should be noted that the 2016 tax return was filed on or about November 27, 2017, and the 2017 tax return was filed on or about July 5, 2018. Although these tax returns were filed after Auto Masters filed for bankruptcy, the income received during those tax years represented fraud proceeds during each tax year for which it was not reported.

6

from AUF Pro Services in 2019 on his tax returns. This failure to report income on his 2019 tax returns forms the basis of Count 21.

The counts are properly joined together because they are part of "the same series of acts or transactions, constituting an offense or offenses." *See* Fed. R. Crim. P. 8(a). Piper failed to report income on his tax returns for three tax years, which constitute a series of the same criminal acts and transactions. The act each year was the same: failing to report income that Piper received (in this case, from a company owned by Mark Janbakhsh).

In addition, the Court should deny the severance because it is not in the interest of judicial economy. The evidence of the underlying fraud and Piper's failure to report fraud proceeds on his tax returns is overlapping, and severing the tax fraud counts would require the Government to present the very same evidence at two separate trials. The evidence of Piper's tax fraud in 2016, 2017, and 2019 will be proved by several of the same witnesses. For example, the Government expects to present evidence at trial about Piper's position at Auto Masters, his access to the Auto Masters and AUF Pro Services bank accounts, and his training and qualifications that establish his familiarity with preparing tax returns. During the fraud, Piper was employed at Auto Masters as the company's CFO. In that role, he had access to the company's bank accounts. As a licensed CPA, he also prepared the company's tax returns, as well as his own tax returns. Evidence related to his role at Auto Masters and his knowledge of finances overlaps in each count with which he is charged, and it is admissible to demonstrate Piper's *mens rea* for both the tax charges and the conspiracy / fraud charges.

Further, many of the same witnesses will be called to establish that the payments made from the Auto Masters and the AUF Pro Services bank accounts were personal expenditures on behalf of Piper. For example, a portion of the unreported income in each year 2016, 2017, and

2019 was in the form of payments to two private schools on behalf of Piper's dependent children. The Government expects to call as witnesses representatives of each of those schools. Severing the trial would require these witnesses to testify at two separate trials.

Moreover, the evidence that Piper participated in the fraud and then did not report fraud proceeds on his tax returns would be admissible against him in the conspiracy fraud trial even if he were not charged with tax fraud. His failure to report fraud proceeds on his tax returns is evidence that he attempted to conceal the underlying conspiracy, and is admissible in the fraud trial even if the tax fraud counts were not charged. *See, e.g., United States v. Barrett*, 153 F. Supp. 3d 552, 566 (E.D.N.Y. 2015) (explaining that "the evidence concerning tax fraud is admissible as direct evidence relevant to the health care fraud, false claims, and money laundering, even if" underlying tax crimes are not admissible due to lack of venue). Likewise, at a trial on solely the tax fraud counts, the Government would be entitled to put on proof that the proceeds Piper failed to report were fraud proceeds. *See United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005) (holding that tax returns which omitted income were admissible as intrinsic evidence of underlying fraudulent scheme because fact that defendant "did not include all of his income suggest[ed] that he had knowledge of the fraudulent scheme"); *United States v. Johnson*, 262 F.R.D. 410, 415 (D. Del. 2009) (holding that "an alleged pattern of concealing income, demonstrated by the tax return evidence as a whole, serves as direct proof that Defendants' possessed the requisite fraudulent intent for the crimes charged").

Finally, any lingering concerns that the jury will unfairly convict Piper of the tax fraud charges based on the conspiracy evidence—or vice versa—can be extinguished by a limiting instruction.

WHEREFORE, the Government respectfully requests the Court deny the Motion to Sever.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By:     *s/ Kathryn W. Booth*
        KATHRYN W. BOOTH
        CHRIS SUEDEKUM
        Assistant U. S. Attorneys
        719 Church Street, Suite 3300
        Nashville, Tennessee 37203
        Phone: 6l5-736-5l5l
        Kathryn.Booth@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice will be served electronically to counsel for defendants, via the Court's Electronic Case Filing System, on February 14, 2024.

        *s/ Kathryn W. Booth*
        KATHRYN W. BOOTH
        Assistant United States Attorney